**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| SURGICAL SCIENCE NORTH AMERICA CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:26-cv-00564-DAR |
| v. | ) ) | Judge David A. Ruiz |
| SONOSIM, INC., | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS OR TRANSFER**

**Table of Contents**

Table of Authorities ..................................................................................................................ii

Preliminary Statement.............................................................................................................1

Argument ..................................................................................................................................2

    **I.**      The Forum-Selection Clause In The MedaPhor Agreement Does Not Apply To The Claims In This Case And, In Any Event, Cannot Be Enforced Against Surgical Science, Which Is Not A Party To That Agreement Nor Closely Related To That Contractual Arrangement....................2

    A.      The License Granted In The MedaPhor Agreement Expired In 2025 And, In Any Event, The Dispute In This Case Is Limited To Alleged Patent Infringement Concerning Products Outside The Scope Of The License Granted By That Agreement. ...............................................................2

    B.      Surgical Science Is Not A Party To The MedaPhor Agreement, Which Means The Forum-Selection Clause In That Agreement Cannot Be Enforced Against Surgical Science.........................................................3

    **II.**     The University Of California Is Not An Indispensable Party..............................8

    **III.**   Surgical Science Filed This Case After It Was Clear The Parties Were At An Impasse On Settlement; The Court Should See The So-Called "Broader Claims" In California For What They Are – An After-the-Fact Attempt To Manufacture A Broader Dispute Specifically To Deprive Surgical Science Of Its Right To Litigate In Its Home Forum. .........................13

    **IV.**   The Section 1404(a) Transfer Factors Do Not Weigh In Favor of Transfer To The Central District Of California. ..................................................17

Conclusion ...............................................................................................................................20

**Table of Authorities**

**Page(s)**

**Cases**

*A123 Sys. v. Hydro-Quebec*,
 626 F.3d 1213 (Fed. Cir. 2010)...................................................................................10, 11

*Abbott Labs. v. Diamedix Corp.*,
 47 F.3d 1128 (Fed. Cir. 1995)....................................................................................11, 12

*Acer, Inc. v. Tech. Props., Ltd.*,
 Nos. C 08-877 JF (HRL) and C 08-882, 2009 U.S. Dist. LEXIS 8001 (N.D.
 Cal. Feb. 4, 2009)..............................................................................................................16

*Akurate Dynamics, LLC v. Carlisle Fluid Techs., Inc.*,
 No. 6:20-CV-00606-ADA, 2021 U.S. Dist. LEXIS 42525 (W.D. Tex. Mar. 8,
 2021) .....................................................................................................................................7

*Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*,
 604 F.3d 1354 (Fed. Cir. 2010)..........................................................................................11

*Atricure, Inc. v. Meng*,
 12 F.4th 516 (6th Cir. 2021) ...............................................................................................4

*Bancomer, S.A. v. Superior Court*,
 44 Cal. App. 4th 1450 (1996) .........................................................................................4, 6

*Berclain America Latina v. Baan Co.*,
 74 Cal. App. 4th 401 (1999) ............................................................................................5, 6

*Bugna v. Fike*,
 80 Cal. App. 4th 229 (2000) ............................................................................................5, 6

*Communs. Test Design, Inc. v. Contec, LLC*,
 952 F.3d 1356 (Fed. Cir. 2020)..........................................................................................14

*Dainippon Screen Mfg. Co. v. CFMT, Inc.*,
 142 F.3d 1266 (Fed. Cir. 1998)..................................................................................... *passim*

*Dowling v. Richardson-Merrell, Inc.*,
 727 F.2d 608 (6th Cir. 1984) ...............................................................................................17

*Elecs. for Imaging, Inc. v. Coyle*,
 394 F.3d 1341 (Fed. Cir. 2005)....................................................................................14, 15

ii

*Excitor A/S v. Visto Corp.*,
No. 11 Civ. 5529 (RMB) (JLC), 2012 U.S. Dist. LEXIS 29921 (S.D.N.Y.
Mar. 1, 2012)........................................................................................................16

*Finjan LLC v. Trustwave Holdings, Inc.*,
No. 20-371-LPS, 2021 U.S. Dist. LEXIS 210217 (D. Del. Oct. 29, 2021) ..............................3

*Firexo, Inc. v. Firexo Grp. Ltd.*,
99 F.4th 304 (6th Cir. 2024) ...............................................................................2, 3, 4

*Gensetix, Inc. v. Bd. of Regents*,
966 F.3d 1316 (Fed. Cir. 2020).................................................................................11

*Glancy v. Taubman Ctrs., Inc.*,
373 F.3d 656 (6th Cir. 2004) ...............................................................................8, 10

*Goonewardene v. ADP, LLC*,
6 Cal. 5th 817 (2019) ..........................................................................................5, 6

*Hooper v. Wolfe*,
396 F.3d 744 (6th Cir. 2005) ....................................................................................8

*Javitch v. First Union Sec., Inc.*,
315 F.3d 619 (6th Cir. 2003) ....................................................................................7

*Keehan Tenn. Inv., LLC v. Praetorium Secured Fund I, L.P.*,
2016-Ohio-8390 (Ohio Ct. App. 2016).......................................................................4

*Kmart Corp. v. Key Indus.*,
877 F. Supp. 1048 (E.D. Mich. 1994).......................................................................14

*l'Énergie Atomique v. Chi Mei Optoelectronics Corp.*,
395 F.3d 1315 (Fed. Cir. 2005)................................................................................20

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019).................................................................................12

*Micron Tech., Inc. v. MOSAID Techs., Inc.*,
518 F.3d 897 (Fed. Cir. 2008)..................................................................13, 14, 15, 16

*Nexans Inc. v. Belden Inc.*,
966 F. Supp. 2d 396 (D. Del. 2013)...........................................................................16

*NOCO Co. v. Shenzhen Valuelink E-Commerce Co.*,
550 F. Supp. 3d 488 (N.D. Ohio 2021)......................................................................20

*Propat Int'l Corp. v. RPost, Inc.*,
473 F.3d 1187 (Fed. Cir. 2007).................................................................................12

iii

*Prouty v. Gores Technology Group*,
121 Cal. App. 4th 1225 (2004) ...................................................................................................6

*Republic Steel v. Beemac, Inc.*,
No. 5:21-cv-00103, 2022 U.S. Dist. LEXIS 130030 (N.D. Ohio July 21, 2022)........17, 18, 19

*Scottsdale Ins. Co. v. Flowers*,
513 F.3d 546 (6th Cir. 2008) ..................................................................................................13

*Smith v. Swaffer*,
566 F. Supp. 3d 791 (N.D. Ohio 2021)....................................................................................20

*The Step2 Co., LLC v. Parallax Group Int'l, LLC*,
No. 5:08-CV-2580, 2010 U.S. Dist. LEXIS 97659 (N.D. Ohio Sept. 17, 2010)......................8

**Statutes**

28 U.S.C. ................................................................................................................................14

28 U.S.C. §1400(b) ...............................................................................................................7, 17

28 U.S.C. § 1404(a) .................................................................................................1, 2, 14, 17

Declaratory Judgment Act ...........................................................................................................1

**Other Authorities**

Rule 12(b)(2)...........................................................................................................................20

Rule 19(a)........................................................................................................................8, 9, 11

Rule 19(b) ................................................................................................................... *passim*

Rule 19(b)(1)...........................................................................................................................8, 10

## **Preliminary Statement**

This is a straightforward, first-filed declaratory-judgment action brought by a company located in Beachwood, Ohio to clear its products of patent-infringement allegations. Surgical Science North America Corporation ("Surgical Science") filed here, in its home forum, after an impasse was reached on demands made by SonoSim, Inc. ("SonoSim"). SonoSim asks the Court to dismiss or ship the case to California on four separate theories – a forum-selection clause, the supposed indispensability of the patent owner, the Declaratory Judgment Act, and 28 U.S.C. § 1404(a). Each theory fails, and none, alone or together, overcomes Surgical Science's right to litigate in its chosen home forum.

SonoSim's lead argument – that a California forum-selection clause compels transfer – rests on a 2017 settlement and license agreement with different companies, MedaPhor Limited and MedaPhor North America, Inc. (collectively, "MedaPhor"), to which Surgical Science is not a party. By its terms, that clause reaches only disputes "arising out of or related to" the agreement, and the license it granted expired in December 2025. This case is not about that agreement; it is about whether Surgical Science's products infringe the Patents-in-Suit. SonoSim's indispensable-party theory fails for a related reason. SonoSim holds an all-fields exclusive license and, as the California court has already held in the earlier litigation between, on the one hand, SonoSim and The Regents of the University of California ("UC") and, on the other hand, MedaPhor, has standing to sue on at least some of these patents on its own. Under established Federal Circuit precedent, the patent owner's interests are adequately represented, and UC is not an indispensable party under Rule 19(b).

SonoSim's remaining arguments are equally unavailing. Its request that the Court decline jurisdiction depends on labeling this first-filed suit an improper "anticipatory" filing. But it was SonoSim that sent a letter fixing a 14-day deadline and reserving the right to "expand" its

1

allegations, making clear that the discussions had reached their logical conclusion absent an agreement.  Under controlling Federal Circuit law, an "anticipatory" label alone cannot displace the first-filed rule.  And the Section 1404(a) factors do not come close to weighing strongly in favor of disturbing Surgical Science's choice of its home forum.  SonoSim's motion should be denied in its entirety.

<u>**Argument**</u>

I. **The Forum-Selection Clause In The MedaPhor Agreement Does <u>Not</u> Apply To The Claims In This Case And, In Any Event, Cannot Be Enforced Against Surgical Science, Which Is Not A Party To That Agreement Nor Closely Related To That Contractual Arrangement.**

To decide whether a forum-selection clause defeats plaintiff's choice of venue, courts must consider (1) whether the clause applies to the dispute at hand, and (2) whether the clause is enforceable against the opposing party.  *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 322-23, 326 (6th Cir. 2024).  SonoSim's argument that the forum-selection clause in the MedaPhor agreement is binding on Surgical Science fails both prongs of this test.

 **A. The License Granted In The MedaPhor Agreement Expired In 2025 And, In Any Event, The Dispute In This Case Is Limited To Alleged Patent Infringement Concerning Products Outside The Scope Of The License Granted By That Agreement.**

The MedaPhor agreement is a red herring.  It has nothing to do with this case.  For one thing, the license granted in the MedaPhor agreement expired upon "the expiration of the last surviving claim of the Licensed Patents."  (Ex. A to Nash Decl., Ex. 1, at § 5.1.)[1]  The last surviving claim of the Licensed Patents expired on December 2, 2025, which was more than three months ***before*** this lawsuit was filed and more than six months ***before*** SonoSim retaliated by filing the California case.  (Nash Decl., ¶ 2.)

---

[1] Unless otherwise indicated, the cited exhibits are incorporated within the accompanying Declaration of Douglas J. Nash ("Nash Decl."), attached hereto as Exhibit 1.

2

Moreover, the forum-selection clause in the MedaPhor agreement is expressly limited to "any court action or proceeding arising out of or related to this Agreement." (Nash Decl., Ex. A, § 8.1)  The Complaint in this case does not mention the MedaPhor agreement, much less assert a cause of action that relates to or arises from that agreement.  (*See* Dkt. 1.)  For good reason.  The question of patent infringement in this case relates to Surgical Science products that, according to SonoSim itself, are materially different from the MedaPhor products licensed and sold more than nine years ago when the MedaPhor agreement was executed.  (*See* Ex. B, p. 4.)  That means that, again, according to SonoSim itself, the products at issue in this case are not "Covered Products" or "Licensed Products" as defined by the MedaPhor agreement and the now-expired license granted by that agreement is thus irrelevant to any issue in this case.  (*See* Ex. A, §§ 1.4, 1.8, 2.1.)  The  MedaPhor agreement simply does not apply to the parties' present dispute concerning patent infringement.  *See Finjan LLC v. Trustwave Holdings, Inc.*, No. 20-371-LPS, 2021 U.S. Dist. LEXIS 210217, *26 (D. Del. Oct. 29, 2021) (holding that a forum-selection clause that applied to "any dispute arising out of or relating to the Agreement" did not apply to the plaintiff's infringement claims because the "allegations of patent infringement neither arise out of nor relate to the . . . Agreement.") (cleaned up).

### B. Surgical Science Is Not A Party To The MedaPhor Agreement, Which Means The Forum-Selection Clause In That Agreement Cannot Be Enforced Against Surgical Science.

Surgical Science is not a party to the MedaPhor agreement.  In the Sixth Circuit, whether an agreement, and more specifically a forum-selection clause in an agreement, can be enforced against a non-party is determined by following the framework set forth in *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304 (6th Cir. 2024).

The first step is to determine which state's law to apply to the interpretation of the agreement.  *Id.* at 327-28.  The two options are Ohio law as the state in which this Court sits, or

3

California law per the choice of law provision in the MedaPhor agreement.  Ohio law governs this choice of law determination.  *Id.* at 327.  Ohio law follows the Restatement (Second) of Conflicts §§ 187-88 (1971) in contract cases, and thus generally accepts choice-of-law provisions in contracts.  *Id.*  Yet, the Sixth Circuit has observed that "it is not clear how Ohio courts would resolve this choice-of-law question" where one of the parties to the case is a non-party to the agreement because "some courts recognize that a contract's choice-of-law provision should not apply when the dispute involves nonparties who did not sign the contract."  *Atricure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021) (cleaned up).

In this case, however, Ohio and California law are close enough on this issue that the Court likely can avoid having to wade into that nuanced question by following the Restatement and applying California law to whether the forum-selection clause in the MedaPhor agreement can be enforced against Surgical Science.  *See Bancomer, S.A. v. Superior Court*, 44 Cal. App. 4th 1450, 1453 (1996) (California law); *Keehan Tenn. Inv., LLC v. Praetorium Secured Fund I, L.P.*, 2016-Ohio-8390, ¶¶ 31-34 (Ohio Ct. App. 2016) (Ohio law).

Under California law, a forum-selection clause can only be enforced against a non-party if that non-party was an intended third-party beneficiary of the agreement or the non-party was "closely related to the contractual relationship."  *Bancomer*, 44 Cal. App. 4th at 1458-61.  To demonstrate that the non-party was "so closely related to the contractual relationship" that it would be proper to enforce the forum-selection clause against it, the party seeking to enforce the clause must show by specific conduct or express agreement that (1) the non-party agreed to be bound by the terms of the agreement, (2) the contracting parties intended the non-party to benefit from the agreement, or (3) there was sufficient evidence of a defined and intertwining business relationship with a contracting party.  *Id.* at 1461.

That said, "the key to the closely related test is whether the nonsignatories were close to

4

the contractual relationship, ***not*** whether they were close to the third party signator. This makes sense because the forum selection clause is part of the underlying contract, and it is the contractual relationship gone awry that presumably spawns litigation and activates the clause." *Bugna v. Fike*, 80 Cal. App. 4th 229, 235 (2000) (emphasis added) (cleaned up).

Indeed, under California law, "generally, a corporate entity does not assume the rights, duties and benefits of another entity which it acquires in a stock purchase. The two entities are assumed to remain separate absent circumstances justifying their treatment as a single entity, such as an alter ego showing or an asset purchase." *Berclain America Latina v. Baan Co.*, 74 Cal. App. 4th 401, 407 (1999) (cleaned up). Notably, SonoSim failed to address this or any other legal standard in its motion despite having declared that "Surgical Science is bound by a mandatory California forum selection clause" in the MedaPhor agreement. (Dkt. 21, p. 1.) It was SonoSim's burden to make this evidentiary showing, and it failed to even address the proper legal standard. And, in any event, SonoSim is wrong.

First, Surgical Science was not an intended third-party beneficiary of the agreement. And, once again, SonoSim failed even to address the relevant three-part test under California law. *See Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 821 (2019). No part of that test favors granting Surgical Science third-party beneficiary status. It was not even affiliated with MedaPhor at the time the agreement was entered into, and, more importantly, the "Change of Control" provision in the agreement expressly provides that the benefits under the License granted by the agreement "will ***not*** extend to the Third Party for business not associated with that of the MedaPhor or Affiliate entity that is acquired."[2] (Ex. A, § 2.2 (emphasis added).) When read in concert with the

---

[2] On February 18, 2025, eight years after the MedaPhor agreement was signed, Surgical Science and what used to be MedaPhor became sister companies owned by a common parent, Surgical Science Sweden AB. *See* https://surgicalscience.com/insights/news/surgical-science-acquires-intelligent-ultrasound/.

definition of "Covered Product," which limits the scope of the License to MedaPhor's "currently available products and any products that have no material alterations," it is clear that the sole beneficiary of the license was MedaPhor.  (Ex. A, §§ 1.4, 1.7, 2.2.)  It simply was not "a motivating purpose of the contracting parties" to provide a benefit to Surgical Science.  *See Goonewardene*, 6 Cal. 5th at 821.  SonoSim's reliance on the general language in Section 15's "Miscellaneous" section that mentions successors and assigns misses the mark.  Surgical Science is not a successor or assign, and, in any event, the more specific language that expressly limits who may benefit from the license trumps that general language.  *See Prouty v. Gores Technology Group*, 121 Cal. App. 4th 1225, 1235 (2004) ("Under well established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision.") (cleaned up).

Second, Surgical Science is not closely related to the contractual relationship.  There is no evidence it had anything to do with MedaPhor when the agreement was negotiated, nor is there any evidence it had anything to do with the underlying lawsuit that resulted in the agreement.  Further, there is no evidence that Surgical Science knew about, let alone agreed to be bound by the terms of the MedaPhor agreement nor that MedaPhor and Surgical Science had a defined and intertwining business relationship in 2017 when the MedaPhor agreement was entered into.  *See Bancomer*, 44 Cal. App. 4th at 1461.  It simply is not enough that, eight years later, MedaPhor and Surgical Science became sister companies.  Indeed, as noted above, "the key to the closely related test is whether the nonsignatories were close to the contractual relationship, not whether they were close to the third party signator."  *Bugna*, 80 Cal. App. 4th at 235 (cleaned up); *see also Berclain*, 74 Cal. App. 4th at 407 (Under California law, "generally, a corporate entity does not assume the rights, duties and benefits of another entity which it acquires in a stock purchase.  The two entities are assumed to remain separate absent circumstances justifying their treatment as a single entity,

6

such as an alter ego showing or an asset purchase.") (cleaned up).[3]

SonoSim's fallback theory of equitable estoppel fares no better. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619 (6th Cir. 2003), which is the only case SonoSim cites for this argument, provides that "a nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a direct benefit from the contract while disavowing the arbitration provision. When only an indirect benefit is sought, however, it is only a signatory that may be estopped from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the underlying contract." *Id.* at 629. While an arbitration agreement is not at issue here, SonoSim cited the case and by analogy this means that Surgical Science would have to be seeking some ***direct*** benefit from the MedaPhor agreement. It has not done so. Surgical Science's declaratory judgment claims do not sound in contract and do not even mention the MedaPhor agreement. Surgical Science's claims seek only a declaration that its products do not infringe the Patents-in-Suit, and they neither rely on nor arise out of the MedaPhor agreement.[4]

---

[3] SonoSim asserts that "Surgical Science does not dispute that it is bound by the terms of the Settlement Agreement" citing correspondence from earlier this year. (Dkt. 21, p. 3.) However, that correspondence was between SonoSim and Surgical Science Sweden AB. It did ***not*** involve Surgical Science North America Corporation, the named party here. (*See* Exs. C, D.) Surgical Science North America Corporation does dispute that it is bound by the terms of the MedaPhor agreement for the reasons discussed herein.

[4] The inapplicability of the forum-selection clause means that at least the patent infringement portion of the California case is likely to be dismissed or transferred to this Court. 28 U.S.C. §1400(b) provides: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Surgical Science is a Delaware corporation and does not have a regular and established place of business in California. Venue for SonoSim's patent infringement claims is improper in California and the presence of other non-patent claims does not change that. *See, e.g., Akurate Dynamics, LLC v. Carlisle Fluid Techs., Inc.*, No. 6:20-CV-00606-ADA, 2021 U.S. Dist. LEXIS 42525, *4 (W.D. Tex. Mar. 8, 2021) (dismissing patent infringement claims because "there is no pendent venue over patent-infringement claims; Section 1400(b) is the exclusive provision controlling venue in patent infringement actions . . . .").

**II.     The University Of California Is <u>Not</u> An Indispensable Party.**

In the Sixth Circuit, and pursuant to Rule 19(b)(1), a party is not an indispensable party whose absence from the case requires dismissal if the absent party's interests are adequately represented by a party to the case. *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 670, 677 (6th Cir. 2004); *see also Hooper v. Wolfe*, 396 F.3d 744, 750 (6th Cir. 2005) ("Therefore, the ability of PPM, Inc. and Mr. Wolfe to represent PPM III adequately militates against finding PPM III to be an indispensable party."); *The Step2 Co., LLC v. Parallax Group Int'l, LLC*, No. 5:08-CV-2580, 2010 U.S. Dist. LEXIS 97659, *36-37 (N.D. Ohio Sept. 17, 2010) ("Here, Parallax is properly before this Court.  Even assuming arguendo that Thrush is not, . . . his interests are perfectly aligned with that of Parallax, and there is no reason to believe that Parallax would not adequately represent these interests.").

This also applies to patent cases.  Indeed, the Federal Circuit has held that a patent owner who was argued to be outside the jurisdiction of the district court was ***not*** an indispensable party to a declaratory judgment action because the exclusive licensee adequately represented the interests of the patent owner.  In *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998), the Federal Circuit held that "even if personal jurisdiction over [the patent owner] were not proper, . . . [the patent owner] was not an indispensable party under Fed. R. Civ. P. 19(b) and therefore [this] declaratory judgment suit could proceed even in [the patent owner's] absence." *Id.* at 1272 (cleaned up).  The Federal Circuit explained further that "even if [the patent owner] is a necessary party under Rule 19(a) because it would be prejudiced by a holding of invalidity of its patent, this prejudice does not automatically make [the patent owner] indispensable." *Id.*  The Federal Circuit reasoned that "prejudice to an absent party is mitigated when the interests of that party are adequately protected by those who are present," and that "if so, the person is not indispensable." *Id.*

The Federal Circuit then held that the patent owner's "interests are adequately protected by" the exclusive licensee because the patent owner and the exclusive licensee "share the common goal of assuring that the . . . patent not be held invalid or be infringed . . . ." *Id.* The Federal Circuit noted with approval that other courts have found that "under these circumstances, an argument that the patentee is indispensable under Rule 19(b) is ***wholly unconvincing***." *Id.* (cleaned up) (emphasis added). The Federal Circuit added that "to the extent it would be prejudiced if the suit were to proceed in its absence, [the patent owner] may intervene in the suit, and this opportunity to intervene may be considered in calculating any prejudicial effect." *Id.* (cleaned up).

Here, the same dynamic exists. UC and SonoSim have a shared interest in the validity of the patents and monetizing any infringement, and those interests are being litigated in this case by the ***exact same*** lead counsel that UC retained to protect its interests in the California case. Despite SonoSim's arguments that "UC's interests are especially distinct," that "UC has independent policy and licensing objectives and it retains economic rights in the patents, control rights over enforcement and settlement," and that "SonoSim cannot bind UC, cannot waive its rights, and cannot adequately represent its interests," (*see* Dkt. 21, pp. 12-13), the truth of the matter is that the license agreement between UC and SonoSim tells a different story.

That is, the license agreement expressly grants SonoSim the right to file an infringement suit ***without*** naming UC as a party – which not only demonstrates SonoSim's aligned interests with UC in enforcing the patents at issue, *see Dainippon*, 142 F.3d at 1272, but UC's written acknowledgment of SonoSim's ability to adequately protect those interests on its own in a lawsuit without UC. (Ex. E, § 8.2.) In fact, the license agreement grants UC a merely permissive and voluntary right to join the suit and does not mandate that UC be named as a party to any infringement lawsuit, further demonstrating that UC is not "indispensable" to protect its interests

9

in the patents.  (*See id.*)  Indeed, SonoSim filing suit on its own is what it initially did in the MedaPhor case and the court in that case explicitly found that "UC Regents transferred sufficient rights in the . . . Patent to SonoSim such that SonoSim has standing on its own to bring the present infringement action."  (Exs. F, p. 1; G, p. 9.)

The license agreement also addresses a specific scenario in which SonoSim has commenced an infringement lawsuit without UC's prior consent.  (Ex. E, § 8.2.)  Notably, the license agreement does **_not_** require SonoSim to dismiss the lawsuit as one would expect were it really the case that "UC's interests are especially distinct."  (*See id.*)  Instead, the agreement provides that, if that occurs, SonoSim "may not join" UC as a party to the case.  (*Id.*)  But the case can continue, demonstrating that UC is not "indispensable" to this action.  (*See id.*)

The license agreement further provides that "any litigation proceedings will be controlled by the party bringing suit," and that under any scenario UC agrees "to be bound by all final and non-appealable determinations of patent infringement, validity and enforceability (but no other issue) resolved by any adjudicated judgment in a suit brought in compliance with this Article 8." (*Id.*, at §§ 8.7, 8.4.)

The fact is, UC decided in advance when it signed the license agreement that SonoSim could adequately represent its interest in an infringement case, reserving for itself a mere voluntary right to join such a case if it wanted to.  It still has that right here, but under both Sixth Circuit and Federal Circuit jurisprudence, UC simply is not an indispensable party under Rule 19(b)(1) because SonoSim, which is represented by the same counsel that represents UC in the California case, can adequately represent UC's interests in this case.  *See Glancy*, 373 F.3d at 670, 677; *Dainippon*, 142 F.3d at 1272.

SonoSim relies on the Federal Circuit's decision in *A123 Sys. v. Hydro-Quebec*, 626 F.3d 1213 (Fed. Cir. 2010).  That case is readily distinguishable.  In *A123*, the Federal Circuit concluded

10

that the licensee could not adequately represent the patent owner's interest in validity and infringement because the license was a limited "field-of-use" license such that the patent owner could have conflicting interests concerning other fields-of-use for its patents. *See id.* at 1221-22. In contrast, in this case, the "field of use" of SonoSim's exclusive license is defined as "all fields." (Ex. E, § 1.6.)

In fact, the Federal Circuit itself has distinguished *A123* for this same reason. *See Gensetix, Inc. v. Bd. of Regents*, 966 F.3d 1316, 1326 (Fed. Cir. 2020) ("As Gensetix correctly points out, it has a license in **every field**, and, as such, the parties' interests in the validity of the patents-in-suit are identical" and holding that "the prejudice to UT is minimal, or at least substantially mitigated, because, unlike the licensee in *A123*, Gensetix will adequately protect UT's interests in the validity of the patents-in-suit.") (emphasis added).  The facts here are squarely in line with the holdings in *Dainippon* and *Gensetix*.  SonoSim's and UC's interests in validity and infringement are identical, SonoSim has not and cannot assert that it and UC have potentially conflicting interests concerning other fields-of-use for the patents at issue, and UC expressly delegated to SonoSim the ability to litigate without UC in the license agreement.

The other cases cited by SonoSim are inapposite, and SonoSim's reliance on them conflates the issue of the patent owner being a necessary party under Rule 19(a), for which dismissal is not required, with the patent owner being an indispensable party under Rule 19(b) such that dismissal is required in its absence. *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010) was about whether a licensee had standing to sue on its own without the patent owner and the court did not decide the indispensable party issue under Rule 19(b) stating, "[w]e express no opinion as to the proper disposal of this issue." *Id.* at 1363. *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995) was about whether a patent owner had the right to intervene in a case brought by its licensee and did not address whether the patent owner was

11

indispensable under Rule 19(b).  *Id.* at 1134.  *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225 (Fed. Cir. 2019) was about whether a licensee had standing to sue on its own or whether it had to sue alongside the patent owner and the court did not decide the indispensable party issue under Rule 19(b) stating, "the district court should consider whether [the patent owner] is indispensable." *Id.* at 1238.  *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187 (Fed. Cir. 2007) also was about whether a licensee had standing to sue on its own or whether it had to sue alongside the patent owner and the court did not even consider the indispensable party issue under Rule 19(b).  *Id.* at 1194.

As for the other factors under Rule 19(b), the Federal Circuit's decision in *Dainippon* is highly instructive as to why UC is not indispensable and why SonoSim's motion to dismiss should be denied:

> The second factor, the court's ability to shape relief to avoid prejudice, is of little relevance in the context of a patent declaratory judgment suit because the relief sought in such a suit does not depend upon the patentee's presence in court.
>
> The third factor, adequacy of the judgment, favors maintenance of the suit in [the patent owner's] absence because a declaration of invalidity or noninfringement would fully serve [the plaintiff's] interest in ensuring that it is free from claims of patent infringement irrespective of [the patent owner's] absence.  In this regard, it is relevant that a declaratory judgment suit is not one in which the plaintiff seeks relief that will require an affirmative act by the absentee, therefore making the case "essentially hollow" if it were to proceed in [the patent owner's] absence.
>
> As to the fourth factor, . . . the fact that an alternative forum exists does not automatically warrant dismissal of the case given Rule 19(b)'s mandate to consider all of the relevant factors and the equities of the situation.

*Dainippon*, 142 F.3d at 1272-73 (cleaned up).

The facts in this case are no different.  The declaratory relief sought here does not depend on UC's presence, the Court can fashion an adequate judgment, and the fact that the case could

12

proceed in California does not trump all of the other factors under 19(b).  UC is not an indispensable party.[5]

### III. Surgical Science Filed This Case After It Was Clear The Parties Were At An Impasse On Settlement; The Court Should See The So-Called "Broader Claims" In California For What They Are – An After-the-Fact Attempt To Manufacture A Broader Dispute Specifically To Deprive Surgical Science Of Its Right To Litigate In Its Home Forum.

Although they are repackaged and reframed around the factors listed by the Sixth Circuit in *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008), SonoSim's arguments for why the Court should decline to exercise declaratory judgment jurisdiction in this case can be reduced to two points – this case was an anticipatory filing and the issues in dispute in the California case are broader than those in this case.  (*See* Dkt. 21, pp. 5-9.)  Neither of those points is well-taken on the facts of this case.

To start with, SonoSim concedes that Federal Circuit law, **_not_** Sixth Circuit law, governs the first-to-file rule and its exceptions in patent cases.  (*Id.*, at p. 5.)  In *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008), a case cited by SonoSim, the Federal Circuit explained that when a district court analyzes whether to permit the first-filed declaratory judgment action to go forward (or to decline to hear it in favor of a later-filed patent infringement action in another forum), it should not apply any "categorical rules." *Id.* at 904.  Instead, a district court should consider the "real underlying dispute: the convenience and suitability of competing forums." *Id.*  In doing so, it "must weigh the factors used in a transfer analysis as for any other transfer motion," such that "when the discretionary decision is presented after the filing of an

---

[5] The Court need not resolve SonoSim's arguments about personal jurisdiction because UC is not an indispensable party.  That said, it is worth noting that the specific acts giving rise to this case were threats made against Surgical Science's parent company.  The license agreement required SonoSim to get UC's written consent before making those threats.  (Ex. E, § 8.1.)  And, those threats were made by UC's counsel in the California case, who also suggested that Surgical Science Sweden AB should meet with UC.  (Exs. C, H.)

infringement action, the jurisdiction question is basically the same as a transfer action under [28 U.S.C.] § 1404(a)." *Id.*

Thus, whether a declaratory suit was anticipatory should be but "one factor in the analysis" and the Federal Circuit has cautioned that a district court should not rely "solely on the anticipatory nature" of a suit when ruling that a first-filed declaratory judgment action should give way to a second-filed infringement suit. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005). Stated differently, the Court needs to frame its decision around the Section 1404(a) transfer factors, not just some disparaging "anticipatory" label given to this case by SonoSim. *See id.; Micron*, 518 F.3d at 904.

Indeed, given the case or controversy requirement, all declaratory judgment actions are in one way or another "anticipatory" filings. What transforms such a case into an improper "anticipatory" filing such that it weighs in favor of discounting the first-filed rule is a bad-faith manipulation of the negotiation process – *i.e.*, using the promise of continued negotiation to buy time to win the race. *See Communs. Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1363-64 (Fed. Cir. 2020). Indeed, in a case favorably cited by the Sixth Circuit in the *AmSouth* decision relied on by SonoSim, a judge in the Eastern District of Michigan correctly noted that "the critical issue appears to be whether the plaintiff in the earlier-filed declaratory action misled the defendant into believing that their dispute could be resolved amicably so that the plaintiff could win the race to the courthouse and therefore choose the forum for the dispute." *Kmart Corp. v. Key Indus.*, 877 F. Supp. 1048, 1053 (E.D. Mich. 1994).

No such facts exist in this case. Rather, the negotiations simply had run their course after a meeting between the CEOs of SonoSim and Surgical Science Sweden AB failed to resolve the dispute and SonoSim's counsel sent a letter with unacceptable terms and a 14-day deadline stating, "SonoSim and UC Regents have already been down this road with MedaPhor in 2017, ***and we***

14

*know how that ended*" and "we reserve all rights to expand our allegations based on further investigations." (Ex. H, pp. 2-3 (emphasis added) (cleaned up).)  This case is similar to *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005).  In that case, the patentee issued a sue-by-date ultimatum, and the declaratory judgment plaintiff filed before that deadline expired.  *Id.* at 1347-48.  There were no allegations of bad faith or buying time to win a race to the courthouse, and thus the Federal Circuit refused to affirm dismissal, holding that the anticipatory character of the suit, standing alone, was an insufficient reason to depart from the first-filed rule absent other convenience considerations.[6]  *Id.* at 1348.

As for SonoSim's point that the issues in dispute in the California case are broader than those in this case, the Federal Circuit has taken a dim view of that argument in the very case SonoSim cites in its brief.  In *Micron*, the Federal Circuit stated:

> This court also gives little weight to the district court's second reason, namely that the second-filed infringement action is broader than the first filed declaratory judgment action.  This reason carries little weight because a patent holder may often easily file an artificially broader infringement suit to avoid declaratory judgment jurisdiction.  If, as in this case, a patent holder could simply name another defendant or add a few additional claims to the later filed infringement, then the Supreme Court's more lenient standard for the declaratory judgment plaintiff would lose its primary intended effect.

518 F.3d at 903-04.  That is exactly what has happened in this case.  With the clear goal of depriving Surgical Science of its home forum, SonoSim has asserted additional claims against Surgical Science in the California case.  Those additional claims are just an opportunistic attempt by SonoSim to convince the Court that the parties' dispute is about more than just the infringement of the patents-in-suit here.

---

[6] SonoSim's characterization that Surgical Science is engaged in "forum shopping" particularly misses the mark.  (*See* Dkt. 21, pp. 7-8.)  It is not like Surgical Science is a patent owner who decided to file in the Western or Eastern Districts of Texas because they are perceived to be favorable venues for patent cases.  Surgical Science filed this case in its home district.  It is hard to understand why Surgical Science's desire to litigate in its home forum is any less valid than SonoSim's desire to litigate in its home forum.

15

As the Federal Circuit noted in *Micron*, "although the relationship between the two competing lawsuits remains a consideration, this consideration cannot be given undue weight because it is easily ***manipulated***." *Id.* at 904 (emphasis added); *see also Excitor A/S v. Visto Corp.*, No. 11 Civ. 5529 (RMB) (JLC), 2012 U.S. Dist. LEXIS 29921, *10 (S.D.N.Y. Mar. 1, 2012) ("While Visto argues that the Texas Action is more comprehensive than this action because it involves additional claims and defendants, district courts should give little weight to the fact that the second-filed infringement action is broader than the first-filed declaratory judgment action because a patent holder may often easily file an artificially broader infringement suit to avoid declaratory judgment jurisdiction.") (cleaned up) (internal quote marks omitted); *Nexans Inc. v. Belden Inc.*, 966 F. Supp. 2d 396, 406 (D. Del. 2013) ("The court shares the concern that, akin to simply naming other defendants, filing another infringement suit on the same patents against other defendants should not be given much weight in deciding whether to apply the first-filed rule.") (cleaned up); *Acer, Inc. v. Tech. Props., Ltd.*, Nos. C 08-877 JF (HRL) and C 08-882, 2009 U.S. Dist. LEXIS 8001, *9 (N.D. Cal. Feb. 4, 2009) ("To allow the addition of related claims to change the parties' stance with respect to who filed first would allow manipulation of venue" and "it is of little import that the second-filed infringement action is broader than the first filed declaratory judgment action because a patent holder may often easily file an artificially broader infringement suit to avoid declaratory judgment jurisdiction.") (cleaned up) (internal quote marks omitted).

Here, the Court should reject SonoSim's argument, seeing the so-called "broader claims" in California for what they are – an after-the-fact attempt by SonoSim to manufacture a broader dispute specifically to manipulate the process so as to deprive Surgical Science of its right to litigate in its home forum. *See id.*

16

### IV.  The Section 1404(a) Transfer Factors Do <u>Not</u> Weigh In Favor of Transfer To The Central District Of California.

"The party seeking transfer bears the burden of proving that the transferee district is a superior venue to the transferor district." *Republic Steel v. Beemac, Inc.*, No. 5:21-cv-00103, 2022 U.S. Dist. LEXIS 130030, *7-9 (N.D. Ohio July 21, 2022) (cleaned up ) (internal quote marks omitted).  "Unless the balance [of factors] is ***strongly*** in favor of the defendant, the plaintiff's choice of forum should ***rarely*** be disturbed." *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984) (cleaned up) (emphasis added) (quoting *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947)).  Indeed, "more than one forum could be an appropriate venue for trial and some inconvenience will exist to either party no matter which venue is chosen," and "if the transferring venue will merely shift the inconvenience from one party to another, a change of venue is inappropriate." *Republic Steel*, 2022 U.S. Dist. LEXIS 130030, at *7-9 (cleaned up) (internal quote marks omitted).

As a threshold matter, the Court must first determine whether the case might have been brought in the transferee court. *Id.*  There is no dispute the case could have been brought in the Central District of California.[7]

Thus, it is necessary for the Court to analyze the factors related to the convenience of the parties and various public-interest considerations. *Id.*  "Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of []willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that

---

[7] The only point being conceded here is that Surgical Science could have brought this declaratory judgment action against SonoSim in the Central District of California.  That, however, is a very different question from whether under 28 U.S.C. § 1400(b) venue would be appropriate in the Central District of California in a case for patent infringement brought ***by*** SonoSim ***against*** Surgical Science.  For at least the reasons discussed in footnote 4 above, that is not being conceded.

17

make trial of a case easy, expeditious and inexpensive." *Id.* (internal quote marks omitted). "Public-interest factors include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (cleaned up) (internal quote marks omitted).

"Importantly, no one factor is dispositive; rather transfer is appropriate if the balance of these factors weighs '***strongly***' in favor of transfer." *Id.* (emphasis added).  Each factor is addressed below.

- ***Relative Ease of Access to Sources of Proof*** – In a patent infringement case most of the necessary proof relates to the accused products.  There is no evidence that such proof resides in the Central District of California or that it resides anywhere other than in this district with Surgical Science or with Surgical Science's foreign affiliates.  Certainly there will be some proof located in the Central District of California related to the patents and the purported inventions.  Thus, there is no one center of gravity for this case, and this factor is at most neutral to transfer and likely leans slightly toward weighing against transfer given that the primary focus of discovery in the case will be on Surgical Science's products.

- ***Witnesses*** – Surgical Science is not aware of any unwilling non-party witnesses, and SonoSim has offered no evidence of the cost of attendance of any witnesses.  This factor, therefore, does not weigh in favor of transfer.

- ***Possibility of View of Premises*** – This factor is not applicable to a patent case, so this factor does not apply.

- ***Other Practical Problems*** – It would be just as inconvenient and expensive for Surgical Science to litigate this case in the Central District of California as it would be for SonoSim to litigate this case here.  Therefore, this factor is neutral to transfer.  Indeed, "if the transferring

18

venue will merely shift the inconvenience from one party to another, a change of venue is inappropriate." *See Republic Steel*, 2022 U.S. Dist. LEXIS 130030, at \*7-9 (cleaned up) (internal quote marks omitted).

- ***Court Congestion*** – Based on the most recent Federal Court Management Statistics, the median time to trial for the average civil case in this Court is roughly 10 months longer than the median time to trial for the average civil case in the Central District of California. (Ex. I.) That said, the more limited scope of this case suggests that the time to trial here could be less than the time for trial for the more complex California case. Therefore, this factor is neutral or weighs only slightly in favor of transfer.

- ***Local Interest in Having Localized Controversies Decided at Home*** – As an initial matter, this is a patent case. It is not the type of case that invokes deep issues of localized public interest. That said, Ohio's interest in adjudicating an accusation of infringement involving products sold by a company located in Ohio is at least on par with California's interest in adjudicating the rights of a California-based exclusive licensee in connection with those allegations of infringement. Therefore, this factor is at most neutral to transfer, if it even should be factored in at all given the nature of the case.

- ***Trial of a Diversity Case in a Forum That is at Home with the Law*** – This is not a diversity case, so this factor does not apply.

Most of the transfer factors are neutral or do not apply to this case. One factor (court congestion) might weigh slightly in favor of transfer. Therefore, it cannot be said that the balance of the factors weighs ***strongly*** in favor of transfer. *See Republic Steel*, 2022 U.S. Dist. LEXIS 130030, at \*7-9 ("Importantly, no one factor is dispositive; rather transfer is appropriate if the balance of these factors weighs '***strongly***' in favor of transfer.")

19

SonoSim's additional undeveloped argument that it is not subject to personal jurisdiction in this Court because it is not located here and has no employees here is belied by the fact that SonoSim has not moved under Rule 12(b)(2).  Given its stated desire to avoid being in this Court, SonoSim surely would have done so were it not worried about what jurisdictional discovery would demonstrate about its contacts with Ohio.  Indeed, SonoSim regularly conducts business here with the Cleveland Clinic and in military training facilities in at least four Ohio locations.  (Exs. J, K, L.)  And it historically has had at least one senior sales territory manager located in Ohio.  (Ex. M.)  And, with its baseless allegations of patent infringement, it has disrupted the business of Surgical Science, which is located in Ohio.  *See Smith v. Swaffer*, 566 F. Supp. 3d 791, 806 (N.D. Ohio 2021) ("In April 2021, the Ohio General Assembly extended the State's long-arm statute to the limits of the Constitution.").

Should SonoSim persist with this undeveloped argument despite not having moved under Rule 12(b)(2), or should SonoSim attempt to submit additional evidence on reply, Surgical Science respectfully requests that it be permitted to conduct jurisdictional discovery.  *See Commissariat à l'Énergie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323-24 (Fed. Cir. 2005) ("In determining the relevance of a request for jurisdictional discovery, we apply Federal Circuit law," and "we hold that the district court abused its discretion in denying [plaintiff's] discovery request."); *NOCO Co. v. Shenzhen Valuelink E-Commerce Co.*, 550 F. Supp. 3d 488, 493 (N.D. Ohio 2021) (recounting that the Court had granted jurisdictional discovery twice in the case in connection with Rule 12(b)(2) motions).

## Conclusion

For the reasons stated herein, Surgical Science respectfully requests that the Court deny SonoSim's motion in its entirety.

20

Date:  July 8, 2026

Respectfully submitted,

/s/ *Philip R. Bautista*
Philip R. Bautista (0073272)
pbautista@taftlaw.com
JoZeff W. Gebolys (0093507)
jgebolys@taftlaw.com
Taft Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114
Ph: (216) 241-2838
Fax: (216) 241-3707

Michael A. Dorfman (*pro hac vice pending*)
mdorfman@barclaydamon.com
Barclay Damon LLP
1742 N. Street N.W.
Washington, DC 20036
Ph: (202) 689-1906
Fax: (202) 689-1901

Douglas J. Nash (*pro hac vice pending*)
dnash@barclaydamon.com
John D. Cook (*pro hac vice pending*)
jcook@barclaydamon.com
Barclay Damon LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Ph: (315) 425-2700
Fax: (315) 703-7353

Naresh K. Kannan (*pro hac vice pending*)
nkannan@barclaydamon.com
Barclay Damon LLP
80 State Street
Albany, New York 12207
Ph: (518) 429-4200
Fax: (518) 427-3499

*Attorneys for Plaintiff Surgical
Science North America*

21

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(f)

I, Philip R. Bautista, certify that this document complies with Local Rule 7.1(f) because this case has not been assigned to any track and because the length of this memoranda in response to Defendant's dispositive motion (ECF No. 18) does not exceed twenty (20) pages.

/s/ Philip R. Bautista

Philip R. Bautista

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2026 a true and correct copy of the foregoing, including the exhibits referenced herein, was filed electronically. Notification of this filing will be sent to the parties via operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Philip R. Bautista

Philip R. Bautista

*Attorney for Plaintiff*

22