# EXHIBIT G

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-2847-GW(MRWx) | Date | October 17, 2016 |
|---|---|---|---|

| Title | *SonoSim, Inc. v. Medaphor Limited* | Page | 1 of 10 |
|---|---|---|---|

Present: The Honorable    **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  (IN CHAMBERS) – FINAL RULING ON MEDAPHOR LIMITED AND MEDAPHOR NORTH AMERICA, INC.'S MOTION TO DISMISS FOR LACK OF STANDING [16]**

**INTRODUCTION**

On April 25, 2016, SonoSim, Inc. ("SonoSim") brought this patent infringement lawsuit, asserting U.S. Patent No. 8,480,404 ("the '404 Patent") against Defendants MedaPhor Ltd. and MedaPhor North America, Inc. (collectively, "MedaPhor"). Dkt. 1. The owner of the '404 Patent is The Regents of the University of California ("UC Regents"), which was joined as a co-plaintiff in the First Amended Complaint ("FAC") on June 22, 2016. Dkt. 11. SonoSim alleges that it is the exclusive licensee of the '404 Patent. *Id.* at ¶ 17.

On July 15, 2016, MedaPhor moved to dismiss SonoSim from the case under Fed. R. Civ. P. 12(b)(1) for lack of standing ("the Motion"), basing its arguments on a heavily redacted version of SonoSim's license agreement with UC Regents. Dkt. 16. The Court denied the Motion without prejudice, and ordered SonoSim to disclose an unredacted version of its license agreement with UC Regents ("the Agreement"). Dkt. 21. After receiving the unredacted license agreement, MedaPhor renewed the Motion, and the parties provided supplemental briefing. Dkts. 27, 31, 35.

For the reasons that follow, the Court DENIES the Motion.

---

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk JG |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.   **CV 16-2847-GW(MRWx)**                    Date   October 17, 2016

Title   ***SonoSim, Inc. v. Medaphor Limited***                    Page   2 of 10

---

## LEGAL STANDARD

Ordinarily, only the patentee has standing to sue for patent infringement. *See* 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent."). However, in certain circumstances, a licensee receiving patent rights can obtain such standing. The Federal Circuit has explained that "the grant of an exclusive license to make, use, or sell the patented invention carries with it the right to prevent others from practicing the invention." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007).

"To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (en banc). If a party is not an exclusive licensee, then "the party has a 'bare license,' and has received only the patentee's promise that that party will not be sued for infringement." *Id.* In other words, "a non-exclusive licensee of a patent has only a personal and not a property interest in the patent." *Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1147 (Fed. Cir. 2003) (internal quotations and citations omitted). "A bare licensee cannot cure its lack of standing by joining the patentee as a party." *Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193-94 (Fed. Cir. 2007).

"The use of the word 'exclusive' is not controlling; what matters is the substance of the arrangement." *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998). As such, "[d]etermining whether a licensee is an exclusive licensee or a bare licensee is a question of ascertaining the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant." *Id.* As observed in *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1266-67 (Fed. Cir. 2010):

> Because an exclusive licensee derives its standing from the exclusionary rights it holds, it follows that its standing will ordinarily be coterminous with those rights.

---

CV-90                    **CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk JG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-2847-GW(MRWx) | Date | October 17, 2016 |
|---|---|---|---|

| Title | *SonoSim, Inc. v. Medaphor Limited* | Page | 3 of 10 |
|---|---|---|---|

Depending on the scope of its exclusionary rights, an exclusive licensee may have standing to sue some parties and not others.  For example, an exclusive licensee lacks standing to sue a party for infringement if that party holds a preexisting license under the patent to engage in the allegedly infringing activity.  Similarly, an exclusive licensee lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it.  In both of these scenarios, the exclusive licensee does not have an exclusionary right with respect to the alleged infringer and thus is not injured by that alleged infringer.  But if an exclusive licensee has the right to exclude others from practicing a patent, and a party accused of infringement does not possess, and is incapable of obtaining, a license of those rights from any other party, the exclusive licensee's exclusionary right is violated.

## ANALYSIS

### A. SonoSim is an Exclusive Licensee of the '404 Patent.

The Federal Circuit has identified three general categories of plaintiffs encountered when analyzing the standing issue in patent infringement suits: "those that can sue in their own name alone; those that can sue as long as the patent owner is joined in suit; and those that cannot even participate as a party to an infringement suit." *Morrow*, 499 F.3d at 1339.  The first category includes plaintiffs who hold all legal rights to the patent as the patent owner or assignee of all patent rights.  *Id*. at 1339-40.  The second category, often identified as exclusive licensees, includes plaintiffs who hold exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent.  *Id*.  The third category includes plaintiffs who hold less than all substantial rights to the patent and lack exclusionary rights under the patent statutes to meet the injury in fact requirement.  *Id*.  These plaintiffs "are not injured by a party that makes, uses, or sells the patented invention because they do not hold the necessary exclusionary rights. Plaintiffs in this category lack constitutional standing." *Id*. at 1341.

The evidence shows that SonoSim falls in category two.  The language of the "Grant" section of the Agreement demonstrates that UC Regents intended to, and did in fact convey an exclusive license to SonoSim.  The "Grant" section of the Agreement states as follows:

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk JG |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2847-GW(MRWx)** | Date | October 17, 2016 |
|---|---|---|---|

| Title | ***SonoSim, Inc. v. Medaphor Limited*** | Page | 4 of 10 |
|---|---|---|---|

> Subject to the limitations set forth in this Agreement, The Regents hereby grants to Licensee an exclusive license (the "**License**") under Regents' Patent Rights, in jurisdictions where Regents' Patent Rights exist, to make, have made, use, sell, offer for sale and import Licensed Products and to practice Licensed Methods in the Field of Use to the extent permitted by law.

Dkt. 27-2, ¶ 2.1.  This language is similar to other cases in which courts found that the license was exclusive for standing purposes.  *See, e.g.*, *Intellectual Property Development Inc. v. TCI Cablevision of CA Inc.*, 248 F.3d 1333, 1336-45 (Fed. Cir. 2001) (finding that the agreement's language, "an exclusive license, to make, use, and sell the inventions . . ." conveyed an exclusive license which gave licensee standing to sue as a co-plaintiff with the patentee); *Wing Engineering Corp. v. United States*, 151 F. Supp. 314, 315 (Ct. Cl. 1957) (finding that the licensee had an exclusive license for standing purposes, where the agreement conveyed "an exclusive license . . . to make, use and sell" the patented article, subject to the reservation that the patent holder could as well).

MedaPhor's initial argument – *i.e.* that SonoSim does not have exclusivity within *all* fields, and thus is not an "exclusive" licensee – is unconvincing.  An exclusive licensee is not necessarily the sole licensee of the patented technology.  *See, e.g.*, *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed. Cir. 1995) (finding that the licensee had an exclusive license for standing purposes, despite eight prior nonexclusive licenses and the licensor retaining rights to make, use, and sell patented product).  Rather, the patentee can grant many exclusive licenses, each consisting of different substantive rights.  *See Bauer & Cle v. O'Donnell*, 229 U.S. 1, 15 (1913) ("[T]here are several substantive rights, and each is the subject of subdivision, so that one person may be permitted to make, but neither to sell nor use, the patented thing.  To another may be conveyed the right to sell, but within a limited area, or for a particular use, while to another the patentee may grant only the right to make and use, or to use only for specific purposes.").  SonoSim has a license that is exclusive in all areas "other than non-profit

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk <u>JG</u> |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2847-GW(MRWx)** | Date | October 17, 2016 |
|---|---|---|---|

| Title | ***SonoSim, Inc. v. Medaphor Limited*** | Page | 5 of 10 |
|---|---|---|---|

educational and research purposes" identified in Section 2.3 of the Agreement.[1]  The fact that the license is not exclusive in all fields does not convert it into a bare license, because a patentee is allowed to grant a limited license, which is exclusive in that specified area.

MedaPhor also argues that UC Regents did not promise to exclude others from practicing the patent, and has actually stated it will not exclude others because it has reserved the right to license the technology to non-profit research institutions.  Dkt. 27 at 1-2.  However, the legal basis MedaPhor provides for this argument is an inaccurate statement of the law.  In its Supplemental Reply, MedaPhor selectively omits, without use of ellipsis, the final clause of the legal standard in its quotation of *Mars, Inc. v. Coin Acceptors, Inc.*  Dkt. 35 at 2.  The phrase in its entirety states that "a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention <u>within that territory as well</u>."  *Mars, Inc. v. Coin Acceptors Inc.*, 527 F.3d 1359, 1368 (Fed. Cir. 2008) (emphasis added) (citing *Rite-Hite*, 56 F.3d at 1552).  The exclusivity given to SonoSim in this case spans all areas other than the non-profit educational and research purposes identified in Section 2.3 of the Agreement.  Thus, in order to have standing in this case, SonoSim does not need to have the promise from the UC Regents that everyone be excluded; it only needs the promise that anyone who do not fall within the exception (*e.g.*, use for educational and research purposes) identified in Section 2.3 of the Agreement would be excluded.

"Because an exclusive licensee derives its standing from the exclusionary rights it holds,

---

[1] Section 2.3 of the Agreement states:

> The Regents expressly reserves the right to: (a) use Regents' Patent Rights and associated technology for educational and research purposes, clinical research, and research sponsored by commercial entities, (b) publically disclose research results, and (c) allow other non-profit research institutions to use Regents' Patent Rights and associated technology for the same purposes as (a) and (b).

*See* Dkt. 27-2, ¶ 2.3.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk JG |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.    **CV 16-2847-GW(MRWx)**                          Date    October 17, 2016

Title    ***SonoSim, Inc. v. Medaphor Limited***                          Page    6 of 10

it follows that its standing will ordinarily be coterminous with those rights." *WiAV Solutions*, 631 F.3d at 1266. As such, "an exclusive licensee may have standing to sue some parties and not others." *Id. See also Sicom Systems Ltd. v. Agilent Techs. Inc.*, 427 F.3d 971, 979 (Fed. Cir. 2005) ("[Licensee's] exclusive right to sue for 'commercial' infringement does not signify that [licensee] has the exclusive right to sue for all infringement."); *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EJD, 2012 WL 3835107, at \*3 (N.D. Cal. Sept. 4, 2012) (A "[l]icensee has standing to pursue patent infringement claims in this case if it had the right to exclude [the accused infringer] from exercising some right conferred by the patent.").

This case presents the same type of circumstances that *WiAV Solutions* contemplated. SonoSim may not have standing to sue non-profit research institutions that use the patent rights "for educational and research purposes, clinical research, and research sponsored by commercial entities." Dkt. 27-2, ¶ 2.3. However, MedaPhor is not a non-profit research institution, but rather a commercial competitor of SonoSim in the marketplace." *See* Dkt. 16 at 11. As such, even if MedaPhor approached UC Regents to negotiate a license, it would not be able to legally obtain one. Therefore, because MedaPhor's alleged infringement implicates SonoSim's exclusive rights under the Agreement, SonoSim has standing to sue in this matter.

At oral argument, counsel for MedaPhor argued that the exception under Section 2.3 of the license agreement is so broad that the promise of exclusivity is simply not meaningful. Specifically, besides reserving use for itself, the UC Regents also reserved the right to "allow other non-profit research institutions" to use the patented technology for educational and research purposes. Dkt. 27-2, ¶ 2.3. And because the patented technology covers "a medical procedure training system," '404 Patent at Abstract, MedaPhor contends that the most likely users would consist of these exempt non-profit research institutions that utilize the patented technology for educational purposes.

Here, it is clear from the license agreement that UC Regents cannot grant another for-

CV-90                          **CIVIL MINUTES—GENERAL**                          Initials of Deputy Clerk JG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2847-GW(MRWx)** | Date | October 17, 2016 |
|---|---|---|---|

| Title | ***SonoSim, Inc. v. Medaphor Limited*** | Page | 7 of 10 |
|---|---|---|---|

profit organization the right to practice the invention for financial gain. Although certain non-profit research institutions would be able to use the patent under limited situations, the invention could also be useful to entities such as for-profit medical institutions or non-profit medical institutions that do not conduct research. At a minimum, SonoSim's license would be exclusive concerning those types of applications. Thus, while the Section 2.3 exception may shrink the territory encompassed by the promise of exclusivity, the license nevertheless confers the exclusionary rights necessary for standing.

**B.** **Even if the License has Transferred Less Than All Substantial Rights, SonoSim may Still be Permitted to Bring Suit as long as UC Regents is Joined**

The Federal Circuit has explained that a patent "is, in effect a bundle of rights which may be divided and assigned, or retained in whole or part," and that when there is an exclusive license agreement that does not transfer enough rights to make the licensee the patent owner, either the licensee or the licensor may sue, but both of them generally must be joined as parties to the litigation. *Alfred E. Mann Found. For Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1359-60 (Fed. Cir. 2010). It further observed that:

> Our prior decisions have never purported to establish a complete list of the rights whose holders must be examined to determine whether a licensor has transferred away sufficient rights to render an exclusive licensee the owner of a patent. But we have listed at least some of the rights that should be examined . . . . Where the licensor retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the licensee. It does not, however, preclude such a finding if the licensor's right to sue is rendered illusory by the licensee's ability to settle licensor-initiated litigation by granting royalty-free sublicenses to the accused infringers. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000). Under the prior decisions of this court, the nature and scope of the licensor's retained right to sue accused infringers is the most important factor in determining whether an exclusive license transfers sufficient rights to render the licensee the owner of the patent.

*Id.* at 1360-61. Here, Section 3.1 of the Agreement provides that: "The Regents . . . grants to

---

CV-90                                   **CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk JG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.    **CV 16-2847-GW(MRWx)**                    Date    October 17, 2016

Title    *SonoSim, Inc. v. Medaphor Limited*                    Page    8 of 10

Licensee the right to sublicense to third parties the rights granted to Licensee hereunder ("Sublicenses"), but Sublicenses will not include the right to issue further sublicenses." Dkt. 27-2, ¶ 3.1.  Additionally, Section 8 of the Agreement contains a somewhat complicated provision for the initiation of patent infringement actions which requires: (1) upon learning of patent infringement, UC Regents and SonoSim are obligated to give the other party written notice and evidence of the infringement, and both are thereafter instructed to cooperate and use their diligent efforts to terminate such infringement without litigation; (2) "[i]f Licensee puts such infringer on notice of the existence of any Regents' Patent Rights with respect to such infringement without first obtaining the written consent of The Regents and if a declaratory judgment action is filed by such infringer against the Regents, then Licensee's right to initiate a suit against such infringer for infringement . . . will terminate immediately . . . ."; (3) if the infringing activity of potential commercial significance by the infringer has not been abated within 90 days of the written infringement notice, then the SonoSim may institute a patent infringement action against the infringer which UC Regents may voluntarily join at its own expense, but may not thereafter commence suit against the infringer for the acts of infringement which are the subject of SonoSim's lawsuit; and (4) if, within 120 days following written notice the infringing activity has not been abated and if SonoSim has not filed an action, UC Regents may institute a patent infringement action.  *See* Dkt. 27-2, ¶¶ 8.1-8.3.

MedaPhor argues that because "UC Regents owes no duty to SonoSim to pursue, or even allow, patent litigation . . . , the UC Regents has not promised to exclude all others."  Dkt. 27 at 3.  But the plain language of the Agreement contradicts this assertion.  The fact that UC Regents <u>may</u> institute suit for patent infringement after 120 days following the date of the infringement notice does not that mean there is no promise to exclude, because this provision only kicks in "if Licensee has not brought suit against the infringer . . . ."[2]  Dkt. 27-2, ¶ 8.3.  Rather, the provision

---

[2] Additionally, because Section 3 of the Agreement gives SonoSim the right to sublicense to third parties the rights that it holds under the Agreement, UC Regents' ability to sue for infringement within that area without

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-2847-GW(MRWx)** | Date | October 17, 2016 |

| | | | |
|---|---|---|---|
| Title | ***SonoSim, Inc. v. Medaphor Limited*** | Page | 9 of 10 |

placing the onus on SonoSim to initiate the suit is further evidence that UC Regents intended to give SonoSim exclusive rights.

SonoSim can enforce its patent rights by putting a third-party infringer on notice with the written consent of UC Regents, and can initiate suit after 90 days if the infringement is not abated. *Id.* at ¶¶ 8.1, 8.2.  SonoSim needs written consent from UC Regents to join it in a lawsuit, but SonoSim may involuntarily join UC Regents if SonoSim pays the litigation fees and costs. *Id.* at ¶ 8.2.  In suits initiated by SonoSim, SonoSim will recover a minimum of 65% of any damages award, in excess of litigation costs. *Id.* at ¶ 8.4.  Additionally, UC Regents is required to "cooperate with [SonoSim] in the litigation." *Id.* at ¶ 8.6.  These provisions give SonoSim the right to initiate suit against potential infringers.  The limited conditions, designed to keep UC Regents informed and to keep UC Regents' litigation costs down, do not detract from SonoSim's right to exclude others. *Cf. Frazier v. Map Oil Tools, Inc.*, C-10-4-JGJ, 2010 WL 2352056, at *3-4 (S.D. Tex. 2010) (denying licensee's motion to intervene where the agreement provided that the licensor "shall have the sole and exclusive right . . . to institute and prosecute lawsuits against third persons for infringement.").  Thus, as noted, this Court finds that UC Regents transferred sufficient rights in the '404 Patent to SonoSim such that SonoSim has standing on its own to bring the present infringement action.  Alternatively, even assuming *arguendo* that the exclusive license delineated in the Agreement did not quite transfer enough substantial rights to have made SonoSim the "owner" of the '404 Patent for present purposes, there certainly was a sufficient transfer such that either UC Regents or SonoSim may sue, as long as both are joined as parties to the litigation. *See Alfred E. Mann Foundation*, 604 F.3d at 1360 (citing *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1344 (Fed. Cir. 2006)).  Said interest, at a minimum, is sufficient to establish standing for jurisdictional purposes when, as here, both licensor (UC Regents) and licensee (SonoSim) are named plaintiffs.

---

SonoSim's permission/cooperation is preempted since SonoSim can, at any time, issue a sublicense to the alleged infringing third party.

---

**CIVIL MINUTES—GENERAL** Initials of Deputy Clerk JG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-2847-GW(MRWx)** | Date | October 17, 2016 |
|---|---|---|---|

| Title | *SonoSim, Inc. v. Medaphor Limited* | Page | 10 of 10 |
|---|---|---|---|

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff SonoSim for Lack of Standing is **DENIED**.

---

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk JG |
|---|---|---|